Filing # 142561189 E-Filed 01/25/2022 03:13:00 AM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. _____

JOSEPH S. GELLER; CHRISTOPHER
BENJAMIN; KEVIN D. CHAMBLISS;
MICHAEL C. GRIECO; FELICIA S.
ROBINSON; ROBERT DEMPSTER;
MARÍA ELENA LÓPEZ; and FLORIDA
DEMOCRATIC PARTY,

     *Plaintiffs,*

vs.

CHRISTINA WHITE, in her official
capacity as Miami-Dade County
Supervisor of Elections,

     *Defendant.*

_____/

**PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTION,
WITH INCORPORATED MEMORANDUM OF LAW
AND REQUEST FOR EXPEDITED HEARING**

Plaintiffs Joseph Geller, Christopher Benjamin, Kevin D. Chambliss, Michael C. Grieco, Felicia S. Robinson, Robert Dempster, María Elena López, and the Florida Democratic Party seek entry of a temporary injunction with notice to the defendants pursuant to Rule 1.610 of the Florida Rules of Civil Procedure.

The relief requested seeks a temporary injunction to be made permanent that directs Defendant Christina White, in her official capacity as Miami-Dade Supervisor of Elections ("SOE") to retain and preserve two essential election records, as required by law, that are used in all elections, including the August 23, 2022 Primary Election and the November 8, 2022 General Election, and all other future elections, specifically: 1) Digital ballot images automatically created by the digital voting equipment in use in Miami-Dade County to count the actual votes; and 2) the individual Cast Vote Records ("CVRs") that correspond to each ballot image and show how each vote was counted on every ballot. In support, Plaintiffs state as follows:

**BRIEF STATEMENT**

1.      This motion incorporates the Verified Complaint filed on January 19, 2022.

2.      Plaintiffs ask for an expedited hearing on this motion.

3.      Plaintiffs' Verified Complaint asserts that the SOE is failing to comply with mandatory Florida and federal law to preserve election balloting materials, specifically digital ballot images and Cast Vote Records (CVRs)

despite having the capability to do so.

4.     The Verified Complaint specifies the legal obligation of the SOE to preserve the digital ballot images that are automatically created at the moment an act of voting occurs and their corresponding CVRs. The failure to retain these ballot images and their corresponding CVRs violates both Florida's Public Records Law (*see* Fla. Stat. § 101.545) and federal civil rights law. (*see* 52 U.S.C. § 20701) (See Exhibit 4). The federal law, originally a part of the Civil Rights Act of 1960, requires that **all election records be saved for 22 months** following a federal election. (emphasis added). The United States Department of Justice recently made clear that the federal statute applies to digital and electronic records as well as paper. *See* U.S. Department of Justice, Guidance Concerning Federal Statutes, issued July 28, 2021 ("The materials covered by Section 301 extend beyond 'papers' to include 'other records.' Jurisdictions must therefore also retain and preserve records created in **digital or electronic form**.") (emphasis added) (Exhibit 3).

5.     Florida law already requires ballot images to be retained for 22 months, and already specifies that ballot images are public records.  The operative statute, Fla. Stat. § 101.545, states that "(a)ll ballots, forms, and other election materials shall be retained in the custody of the supervisor of elections in accordance with the schedule approved by the Division of Library and Information Services of the Department of State." Rule 1B-24.003(1)(c), Florida Administrative Code, Florida Department of State General Records

Schedule GS3 for Election Records, authorized by § 101.545, Florida Statutes, specifies the following in Item #113 found on Page 3 (Exhibit 2):

**BALLOT IMAGE FILES**                                                                 **Item #113**
This record series contains records of the content of each ballot cast on an electronic voting system.  To protect voter privacy, the stored files are randomly sorted so that the ballots cannot be matched to the voting system transaction logs.  Electronic media such as memory card chips can be cleared for next election provided ballot image files are printed out and retained in accordance with retention schedule. The retention period is based on Title 42, U.S.C. 1974, Retention and preservation of records and papers by officers of elections.
**RETENTION:**
a) Record copy.  22 months after certification of election.
b) Duplicates.  Retain until obsolete, superseded, or administrative value is lost.

The definition of digital ballot images meets the definition of ballot images in the GS3, as follows: A digital voting system is an electronic system by definition. Ballot image files on Miami-Dade's voting system are randomly sorted so that the ballots cannot be matched to the voting system transaction logs. Electronic media (USB drives) can be cleared for the next election. "Printed out" has the common meaning of transferring to a different medium, such as another memory device, for the purpose of preserving records. Statutes have long understood that "writing" and "printing" of records does not necessarily mean onto paper. See Exhibit 8, Explanation of Item #113 by Ray Lutz.

6.     Florida law does **not** give the Miami-Dade SOE discretion regarding the retention of ballot images. Rule 1B-24.003(1)(c), Florida Administrative Code, Florida Department of State General Records Schedule GS3 for Election Records, states at p. i:  ". . . a public agency is **not** permitted to **reduce** the retention periods stated in a general records schedule." (emphasis in original document) (Exhibit 2).

7.     Section 101.015, Florida Statutes, requires the Department of State, Division of Elections to establish minimum standards for certification of electronic (e.g. digital) voting systems. These minimum standards are contained in the Florida Voting System Standards published by the Department of State, Division of Elections, Bureau of Voting System Certification, Form DS-DE 101, Eff. 1-1-05, Exhibit 6. The Voting System Standards include the following paragraph on Page 19:

> The generation of reports by the system shall be performed in a manner, which does not erase or destroy any ballot image, parameter, tabulation or audit log data. The system shall provide a means for assuring the maintenance of data integrity and security for a period of at least 22 months after closing of the polls.

Despite the requirement that a voting system certified in Florida "**not** erase or destroy any ballot image," the Florida Bureau of Voting Systems Certification certified voting systems by vendor Election Systems Software (ES&S) that provide SOEs with the option to erase and destroy (not save) the ballot images that the department's own guidelines state must not be erased or destroyed.

8.     The SOE has the capability to preserve digital ballot images and CVRs. In fact, the SOE already preserves these materials for ballots with write-in selections *only*. The failure to preserve ballot images has resulted in accuracy issues in those counties that are erasing them. During a post-election statewide recount in November 2018, for example, Broward County, which follows the same practice as Miami-Dade, "lost" or could not account for more than 2,000 paper ballots and did not submit its recount numbers to the state, thus undermining and invalidating the Broward County recount. Four other

Florida counties also lost or could not account for all voted ballots during the 2018 statewide recount. Retaining the ballot images would have been of significant assistance in preserving and protecting the accuracy and integrity of the recount.

9.      Since the actual vote tabulation results from the counting of digital images instead of paper ballots, confirmation of the accuracy of the vote count is assured only when digital images are preserved. Florida law recognizes the importance of digital ballot images in affirming the accuracy of the vote count by authorizing their use in election recounts and audits. *See* § 102.166(6), Fla. Stat. ("Nothing in this section precludes a county canvassing board or local board involved in the recount from comparing a digital image of a ballot to the corresponding physical paper ballot during a manual recount."); § 102.166(1)(b), Fla. Stat. ("A manual recount consists of a recount of marksense ballots or of **digital images** of those ballots by a person.") (emphasis added). It is inconsistent with Florida law and illogical to allow digital ballot images to be the basis for a recount but to permit SOEs to delete them.

10.     The ballot image is the **only** source of the actual vote count of that ballot. A ballot image is a public record because it is in the chain of custody of the vote and an indispensable part of the election's audit trail. A ballot image cannot be deleted any more than a ballot that is duplicated because the original paper ballot has been damaged can be destroyed. Both original ballot and duplicate ballot must be preserved because they are, like ballot images, in

the chain of custody of the vote and an indispensable part of the election's audit trail.

11.   Rule 1.610 of the Florida Rules of Civil Procedure authorizes temporary injunctive relief to compel the SOE to comply with her required duties to preserve election ballot materials for a period of twenty-two (22) months following every election.

12.   The temporary relief sought is cost effective because the digital images reside on the voting machines and are readily subject to being downloaded and copied on the computer equipment resident in each SOE office. SOEs routinely and automatically save and download election materials onto their servers, but the Miami-Dade SOE is failing to do this for the digital ballot images, despite the fact that the electronic data is readily available and the manufacturer's instructions provide an easy-to-save process for securing the information from destruction.

13.   Plaintiffs have communicated with the SOE in connection with this preservation requirement, and have confirmed that the required preservation of the digital electronic ballot images and CVRs is not being done.

14.   In support of this motion, Plaintiffs incorporate their Verified Complaint as proof of the facts supporting temporary injunctive relief.

15.   Plaintiffs ask for an expedited hearing on this motion.

**Plaintiffs Are Injured by the Failure to Follow Florida and Federal Law Requiring Ballot Preservation, Warranting Injunctive Relief**

16.   As set forth in the Verified Complaint, this lawsuit is brought by

and on behalf of Florida voters, candidates, and the FDP in order to require the SOE to preserve digital ballot images that are automatically created during the process of scanning election ballots and their corresponding CVRs. Both Florida and federal law already require the preservation of the digital ballot images and CVRs as ballot materials. Yet, the Miami-Dade SOE refuses to preserve the digital ballot images and their corresponding CVRs despite requests for preservation of the ballot materials.

17.     Plaintiffs are Florida elected officials, candidates, voters, and the FDP. The individual Plaintiffs have an interest in the just and proper administration of Florida elections in accordance with Federal and Florida law, including public records laws. Additionally, the FDP is properly positioned to assert the rights of its members who will vote in an upcoming election. *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1078-79 (N.D. Fla. 2004) (Hinkle, J.) (political party is positioned to "assert its own rights as a political party and also the rights of its candidates and voters.").

18.     Digital electronic vote scanners are in use in Miami-Dade County as the mechanism by which voters cast ballots and the ballots are tabulated, including vote-by-mail ballots. These digital vote scanning systems replaced optical scanners over the course of the past ten (10) years. These digital systems function by capturing an electronic (digital) image of each vote on each ballot. As ballots are fed through digital scanners, the scanners automatically create an electronic image of each ballot that is automatically stored as an

electronic file.

19.     A key difference between optical scan and digital scan systems is that the digital scan counts the marks (votes) shown on the digital images instead of paper ballots themselves for the official ballot tabulation. By contrast, the formerly used optical scanner systems counted the marks on the paper ballots.

20.     This digital scan voting system in use in Miami-Dade County means the digital ballot images and CVRs are a necessary and automatic part of the chain of custody of the vote and therefore must be preserved under Florida public records law and the federal law that requires all election materials to be preserved for 22 months following a federal election. 52 U.S.C. § 20701.

21.     Since the actual vote tabulation results are obtained from the digital ballot images, the accuracy of the vote count is assured only if the digital images are preserved. This is an important development in the use of electronic ballot image systems. Paper ballots are sometimes lost or misplaced. In the 2018 general election in Florida, for example, 3,000 votes were "lost" during the statewide U.S. Senate and Florida Commissioner of Agriculture recounts, 2,040 of which were "lost" in Broward County alone.

22.     Separately, during the 2008 U.S. Senate election in Minnesota, an entire bag of ballots "disappeared" in a Minneapolis precinct during the Al Franken/Norm Coleman recount. That election was decided by just 312 votes.

23.     In the Georgia 2020 primary election, election officials in four Georgia counties discovered that the newly implemented digital scanner system failed to properly count all legitimate votes when scanning vote-by-mail ballots. Election officials in one of those counties, Morgan County, used the automatically created digital ballot images to help determine the true vote count, thereby recovering votes that would otherwise have been lost.

24.     Despite the automatic availability of the digital electronic voting systems to create permanent digital ballot images and CVRs, the SOE has refused to preserve or mandate the preservation of the digital ballot images and their corresponding CVRs. This refusal imperils the validity and accuracy of the votes actually cast in every Miami-Dade election.

### The SOE is Not Preserving Digital Ballot Images Automatically Created by Voting Equipment Used in Miami-Dade County Elections or Their Corresponding CVRs

25.     Miami-Dade County uses electronic digital-scan election equipment manufactured by Election Systems & Software (ES&S), a firm headquartered in Omaha, Nebraska. The ES&S voting equipment used in Miami-Dade allows digital ballot images to be preserved. Nevertheless, the SOE does not preserve all digital ballot images or CVRs created by the election equipment. See Exhibit 9, Florida Voting Systems by County; Exhibit 7, Plaintiffs' Public Records Requests and Miami-Dade SOE Response

26.     The digital scanner voting machines used in Miami-Dade count the marks on the digital image of the ballots rather than the marks on the paper

ballots. This is different from optical scanners that count the marks on the paper ballots.

27.     Scanners automatically make digital ballot image files of every ballot. The digital ballot image files are then read by software in order to count the ballots. It is necessary to make ballot image files in order to count the ballots. The digital image files are automatically generated. The scanners cannot and do not count the votes without first creating the ballot image files. Digital ballot images and their corresponding CVRs provide both evidence of the votes cast and evidence as to how those votes were counted.

28.     Miami-Dade uses ES&S DS200 scanners for precinct and early voting. High speed scanners, including the DS850, are used to count vote-by-mail ballots and for machine recounts, among other uses.

29.     On June 27, 2020, the Governor of Florida signed into law CS/HB 1005, legislation authorizing the use of digital ballot images in election recounts beginning in 2021. *See* Section 102.166(6), Fla. Stat. This law adds urgency to the preservation of digital ballot images and their corresponding CVRs as vital election records. The new law permits the use of digital ballot images to be used for election recounts. Candidates facing recounts in counties that do not preserve ballot images will be denied the right to use those images in recounts in an equal manner to candidates in counties that are preserving ballot images.

30.     The Affidavit of Raymond Lutz is attached as Exhibit 10. Mr. Lutz

is an independent election specialist with significant experience in voting systems, including ES&S digital ballot equipment used in Miami-Dade County.

31.    Mr. Lutz states the following in ¶ 7 of his Affidavit:

In simple terms, the DS200 precinct scanner first scans the front and back of each page to create relatively high-resolution ballot images. These are processed without reference to the paper ballot itself to determine the intent of the voter by inspecting the target ovals in the ballot image, among other alignment features.

32.    Mr. Lutz states further in ¶ 12 of his Affidavit:

All subsequent processing is based on interpretation of the digital ballot by internal software. The digital ballot is thus an absolute record of the DS200 [voting machine].

33.    Mr. Lutz further avers in ¶ 25 of his Affidavit:

Prior to the advent of digital scanning devices, many jurisdictions used "mark sense" scanners that detected votes directly from paper ballots. Light was reflected off the surface and a few photodetectors would measure the darkness of the paper in a few locations across the page as it was pulled through the mechanism. In these older systems, no digital ballot images were created.

34.    Mr. Lutz explains the use of digital scanning systems to recognize voter intent and support post-election audits in ¶ 26 of his affidavit:

With a digital scanning system, the paper ballots are scanned first to create images, which are then used to recognize voter intent, and can also be used to support post-election audits. Once the ballot images are created, there is no further reference to the paper ballot.

35.    Mr. Lutz emphasizes the role of the digital ballot images as an integral component of the election and ballot materials in ¶ 18 of his affidavit:

Ballot images are extremely important in the chain of events from paper to the final tabulation of the vote and must not be deleted. These records must be maintained and eventually reported.

36.     The Affidavit of Dr. Thomas W. Ryan, Ph.D. is attached as Exhibit 11. Dr. Ryan is an elections specialist with significant experience in voting systems, including ES&S digital ballot equipment. Dr. Ryan holds his doctoral degree in Electrical Engineering and has more than thirty (30) years of experience with digital image creation, processing, and interpretation. Dr. Ryan served as Chair of the Pima County, Arizona Election Integrity Commission, as a 9-year appointee of the Pima County Board of Supervisors. He was part of the implementation of the DS850 elections management system in Pima County.

37.     Dr. Ryan states the following in ¶ 6 of his Affidavit:

The system begins the ballot counting process by creating a digital image of the paper ballot. All subsequent processing is based on interpretation of the digital ballot by internal software. The digital image is thus an absolutely necessary product of the DS850 [voting machine]. The interpretation of the image occurs very rapidly (approximately 0.2 seconds per ballot) allowing the ballots to be immediately sorted into said output bins. The image is binary (black and white) and is scanned at a spatial resolution of 200dpi.

38.     Dr. Ryan's Affidavit also states, in ¶ 11:

The votes represented by the collection of CVRs are accumulated to create vote totals for each candidate and issue represented on the ballot. The reporting software uses these tabulation figures to create election summaries that are subsequently certified by local officials during the canvass.

39.     As explained by Dr. Ryan, based on his extensive experience with elections systems, these digital ballot images are "public records that must be saved as long as the original paper ballots are retained." Affidavit, ¶ 16.

40.     Ballot images and their corresponding CVRs produced by digital scanning voting equipment are evidence of the actual counted votes and,

therefore, are in the chain of custody of every vote. The digital ballot images and their corresponding CVRs are the primary record associated with the count and subject to disclosure under Florida's public record laws. Ballot images are also election materials that must be preserved for at least twenty-two (22) months.

41.     The DS450 and DS850 high-speed digital scanners, used primarily for vote-by-mail ballots, come equipped with a large, 1-Terabyte (TB) capacity hard drive designed to store all ballots scanned in an election. The 1-TB hard drive can save up to 5 million ballot images.

42.     The DS200 scanners are known as "precinct scanners." These devices are used in Miami-Dade inside the precincts to scan voter ballots. The DS200 scanners can be set in the election management system to preserve digital ballot images and their corresponding CVRs. The scanners utilize a thumb/flash drive (memory stick) for storage. The USB thumb/flash drives approved by ES&S come in 1GB, 2GB, 4GB, and 8GB capacities. The 8GB has sufficient capacity to store ballot images for the more populous counties during multi-day early voting, or alternatively, these counties could use smaller capacity USB drives and change them daily, as is done in some counties. The 1 GB, 4 GB and 8 GB have the capacity to store ballot images during Election Day voting. A 12-hour day of voting (ballots cast on a precinct digital scanner) minimally requires a 1 GB drive according to vendor specifications. The capacity of the 4 GB and 8 GB drives is substantially greater than the capacity

of the DS200 voting machines to process ballots. *See* Exhibit 12, ES&S System Overview, Voting System 5.0.0.0, highlighted at pages 61-62 of the attachment. The vendor recommended price for the certified ES&S 2 GB is $73 and 8GB USB thumb/flash drives range from $150 to $175. The capacity of the 4-GB and 8-GB memory drives is substantially greater than the capacity of those voting machines to process the ballots.

43. ES&S demonstration videos distributed to jurisdictions implementing the DS200 precinct scanners explain the ballot scanning process (video demonstration available at https://youtu.be/ODIpmtpcftE?t=843 (last accessed June 22, 2020)):

> It is important to note that it actually takes an image of the front and back of the ballot. Those are actually stored on the thumb drive. So at the end of the election, not only do you have the results on the thumb drive, you have images of every ballot that was cast. You have a backup stick with all the images and results on it in case that first stick is lost. You have all your paper ballots down at the bottom. So you have the results in quite a few places.

44. According to the ES&S publication dated April 7, 2015, titled "Enhancing the Election Process for the Commonwealth of Virginia," attached as Exhibit 13 at p. 5, the DS200 "SAFEGUARDS VOTER INTENT." The publication further explains that "[t]he system captures and retains digital images and cast vote records of every scanned ballot for auditing and adjudication. ES&S does not alter a single retained and captured digital image." Additionally, the ES&S Quick Start Guide for the DS200 states that the machine "retains individual digital ballot images for auditing and adjudication."

*See* Exhibit 14 (reference highlighted).

45.     The ES&S digital voting systems were manufactured in a manner that automatically complied with legal requirements to preserve election materials. The ES&S Voting Systems 5.2.0.3 System Functionality Description, in § 2.1.10 Data Retention, Controlling Requirements, attached as Exhibit 15, states at p. 54:

> United States Code Title 42, Sections 1974 through 1974e state that election administrators shall preserve for 22 months "all records and paper that came into (their) possession relating to an application, registration, payment of poll tax, or other act requisite to voting." This retention requirement applies to systems that will be used at anytime for voting of candidates for federal offices (e.g., Member of Congress, United States Senator, and/or Presidential Elector). Therefore, all voting systems shall provide for maintaining the integrity of voting and audit data during an election and for a period of at least 22 months thereafter.

46.     The U.S. Election Assistance Commission Certification, attached as Exhibit 16, for ES&S digital voting systems states at p. 2:

> DS200 digital scanner is a paper ballot tabulator designed for use as a polling place scanner. After the voter makes their selections on their paper ballot, their ballot is scanned into the unit for immediate tabulation. Both sides of the ballot are scanned at the same time using a high-resolution image scanning device that produces ballot images.

47.     That same Certification for the DS850 states at p. 2:

> The DS850 is a high-speed, digital scan central ballot counter that uses cameras and imaging algorithms to capture voter selections on the front and back of a ballot, evaluate results and then sort ballots into discrete bins without interrupting scanning. A dedicated audit printer generates a continuous event log. Machine level reports are produced from a second, laser printer. The scanner saves voter selections and ballot images to an internal hard disk and exports results to a USB Memory stick for processing with Election Reporting Manager.

48.    ES&S digital ballot machines provide three options on the machine with respect to the preservation of the automatically created digital ballot images:

- None
- All Processed Images
- Processed Write-In Images Only

*E.g.*, Exhibit 17, ES&S DS850 Operators Guide at pp. 86-87.

49.    The recommended setting on the ES&S digital ballot voting machines is to preserve "All Processed Images," i.e., preserve all digital ballot images. The ES&S directive is included in the ES&S DS850 Operators Guide. *Id.*

50.    Saving all ballot image files and their corresponding CVRs is an automated process based on a single choice made when setting up scanners before an election. The selection of "save no images" is the equivalent of the actual destruction of election material that is automatically created by operation of the election scanning technology. The selection of "save write-ins only" is the equivalent of the actual destruction of all other material that automatically created by operation of the election scanning technology.

51.    Plaintiffs requested production of all ballot images and corresponding CVRs from the November 2020 General Election, most recently in December 2021. However, the SOE did not fulfill Plaintiffs' request, but instead provided ballot images and their corresponding CVRs only for ballots with write-in votes, fewer than one in 1,000 of the total ballots cast in the

November 2020 General Election. Additionally, although requested to do so, SOE gave no statutory citation for failing to comply with Plaintiffs' request, in violation of § 119.07(1)(e) ("If the person who has custody of a public record contends that all or part of the record is exempt from inspection and copying, he or she shall state the basis of the exemption that he or she contends is applicable to the record, including the statutory citation to an exemption created or afforded by statute; and in violation of 119.97(1)(f) ("If requested by the person seeking to inspect or copy the record, the custodian of public records shall state in writing and with particularity the reasons for the conclusion that the record is exempt or confidential."). See Exhibit 7.

52.     Digital scan voting machines are different from predecessor voting machines, known as optical scanners. Digital voting scanners automatically make a digital image of each ballot as the ballot is fed through the scanner. Digital voting scanners actually count the digital images, while optical scanners merely count the paper ballots. When a voter's ballot is fed into the digital scan voting machine, the equipment takes a digital image of that ballot and stores it into the machine's memory. A public record is created the moment the ballot is scanned. These digital ballot images and their corresponding CVRs are therefore in the chain of custody of the vote, and constitute election materials and public records protected from destruction by federal and state election and public records laws. Exhibit 11, Affidavit of Dr. Thomas W. Ryan; Exhibit 18, Affidavit of John R. Brakey; Exhibit 19, ES&S Test Plan for EAC VVSG 1.0

Certification Testing (4/6/2018); [Exhibit 20](), Ballot Image Information on ES&S Systems, Issued 11/1/2018; [Exhibit 21](), Florida Division of Elections Voting System Qualification Test Report (January 2018)

53.     Digital ballots are a "public record" pursuant to Florida law which defines the term *public records* to include "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, **made or received** pursuant to law or ordinance or in connection with the transaction of official business by any agency." (emphasis added).

54.     The ballot images on DS200 scanners are not preserved when selecting "None" and only a small percentage of the ballot images are preserved when selecting "Write-in Images Only."

55.     According to publicly available information, including from the conduct of the November 2020 general election in Florida, the SOE has allowed the destruction of ballot images and their corresponding CVRs in the 2020 general election by their decision not to select the recommended option to preserve "All Processed Images." By failing to set voting machines to preserve "All Processed Images," the SOE is destroying the images and their corresponding CVRs rather than exporting them to the server for storage and preservation. Ballot images and their corresponding CVRs on the voting

machine hard drives not preserved are eventually written over or cleared by elections staff.

56.    Florida election officials are required to preserve all election materials for at least twenty-two (22) months in federal elections under federal law (52 U.S.C. § 20701) and state law (Chapter 119, Fla. Stat.; Exhibit 2, State of Florida General Records Schedule GS3 for Election Records, Page 3, Item #113 as authorized by § 101.545, Fla. Stat.; *see also id.* at Page vii, § V. ELECTRONIC RECORDS ("Records retention schedules apply to records regardless of their physical format. Therefore, records created or maintained in electronic format must be retained in accordance with the minimum retention requirements presented in these schedules, whether the electronic records are the record copy or duplicates.")). ES&S has advised "if a record is generated, [the federal statute] comes into force and the appropriate authority must retain the records for 22 months." Exhibit 15, *supra*.

57.    As established by ES&S documents, ballot images are automatically created in the digital-scan voting systems, including in Miami-Dade. *See* Exhibit 20, Ballot Image Information on ES&S Systems, Issued 11/1/2018. Separately, Florida State Election Director Maria Matthews informed SOEs in her 10/31/2018 memo that "as public records custodian, you are responsible for the records you/your office obtain or create." See Exhibit 22, Maria Matthews Memorandum. Ms. Matthews further advised, "For those utilizing voting systems that are programmed to capture images of ballots

as they are scanned, those images may be subject to retention requirements under the public records law." Exhibit 22, Maria Matthews Memorandum. Attorney Ronald Labasky, Executive Director and General Counsel of the Florida Supervisors of Elections, Inc. (the statewide SOE association), similarly wrote in an official email to SOEs on November 1, 2018, that "the Division [of Elections] … stated the obvious, that if you create a ballot image it must be retained pursuant to the [GS3 record retention] schedule, just as you do with the ballots." See Exhibit 23.

58.    This request for temporary injunctive relief seeks an immediate order requiring the SOE to comply with existing federal and state laws requiring elections officials to preserve all election materials, including digital ballot images and their corresponding CVRs, for a period of 22 months following any election on which a federal candidate appears.

59.    Preservation of the digital ballot images and their corresponding electionsCVRs is required by federal law (52 U.S.C. § 10701) and Florida's public records and elections laws, as well as Florida's administrative rules (State of Florida General Records Schedule GS3 for Election Records, Item 113, authorized by § 101.545, Florida Statutes). The State of Florida's Voting Systems Standards expressly include the preservation of "any ballot image" for the required 22-month period following an election. Exhibit 6, Florida Voting System Standards, Form DS-DE 101 (1-12-2005), p. 19.

60.    Temporary injunctive relief is needed during the pendency of this

litigation because the non-preservation of these ballot materials cannot be cured once destruction or overwriting has begun. Once destroyed, the images cannot be recovered.

61.    Temporary injunctive relief does not cause any financial or other injury or damage to the SOE because the process of preserving the ballot images is simple and the cost of preservation and storage is minimal. The SOE routinely and automatically saves and downloads election materials onto its servers. Despite the ready availability of the digital images and their corresponding CVRs on the voting machines and the ease of compliance with the manufacturer's instructions for preservation, Miami-Dade SOE routinely allows these records to be destroyed. Nor does a directive to follow the law cause any harm to the SOE or any other person or entity.

62.    Temporary injunctive relief will not cause delays in voting or delays in the uploading of results to the elections office on election night. The ballot images are not uploaded on election night so they do not delay the uploading of election results from the precincts. The ballot images are stored on the USB flash drives in each voting machine throughout Election Day and are uploaded back at the elections office at the convenience of elections staff, sometimes days after the election itself. Furthermore, the Miami-Dade voting machine vendor, ES&S, has made the following statement regarding whether saving ballot images will slow down the time it takes for voters to vote throughout Election Day or during early voting:  The difference in time between saving

ballot images and not saving images can be measured "in the millisecond range, which is unnoticeable to the user [voter]." See Exhibit 24, Highlighted Excerpts from ES&S Contract No. 071B7700120.

63.   Approximately half the SOEs in Florida are retaining ballot images without any significant cost or time delays. As an example, in 2018, Volusia County, the 12th most populous county in the state, began retaining all ballot images generated by its ES&S digital-scan voting system and has not experienced problems with time delays or cost increases as a result of saving the images. See Affidavit of Susan Pynchon, Exhibit 25.

**STANDARD FOR INJUNCTIVE RELIEF**

64.   Temporary injunctions may issue if the plaintiff "satisfies a four-part test under Florida law: 'a substantial likelihood of success on the merits; lack of an adequate remedy at law; irreparable harm absent the entry of an injunction; and that injunctive relief will serve the public interest.'" *Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So. 3d 183, 186 n.7 (Fla. 2009) (quoting *Reform Party of Fla. v. Black*, 885 So. 2d 303, 305 (Fla. 2004)); *see also St. John's Inv. Mgmt. Co. v. Albaneze*, 22 So. 3d 728, 731 (Fla. 1st DCA 2009). As is set out below, the Plaintiffs satisfy these requirements, warranting the issuance of a temporary injunction.

65.   The Verified Complaint establishes a founded basis upon which to conclude the Plaintiffs are subject to irreparable harm, have no available remedy at law, have a substantial likelihood of success on the merits, and that

the relief requested is consistent with the public interest. *See City of Jacksonville v. Naegele Outdoor Advertising Co.*, 634 So. 2d 750 (Fla. 1st DCA 1994).

**A. Plaintiffs Have a Substantial Likelihood of Success on the Merits.**

66.     Defendant SOE is responsible for implementing elections in Miami-Dade County and has the duty to follow and enforce federal and state laws pertaining to elections, including the preservation of digital ballot images and their corresponding CVRs created by voting.

67.     Federal law requires that all election records must be preserved. 52 U.S.C. § 20701 and the U.S. Department of Justice Guidance document of July 28, 2021 clarifies that all election records include digital and electronic records.

68.     Florida law specifically requires the retention of ballot images for 22 months. State of Florida General Records Schedule GS3 for Election Records, page 3, Item 113, Exhibit 2; and Florida Voting System Standards, Exhibit 6.

69.     Ballot images and their corresponding CVRs are part of the "audit trail information." ES&S, in its own literature, promotes ballot images and their corresponding Cast Vote Records to be used for "auditing." (See Exhibit 26, ES&S Security Bulletin at p. 2). The ES&S Security Bulletin further explains, at p. 2:

> The system provides easy-to-read, side-by-side comparisons of the
> unaltered ballot image and its corresponding cast vote record,

making it possible to audit any election in a fraction of the time.

70.     The introduction to the State of Florida Records Schedule GS3 for Election Records, Paragraph V, page vii, provides, in part: "Records retention schedules apply to records regardless of their physical format. Therefore, records created or maintained in electronic format [i.e. ballot images] must be retained in accordance with the minimum retention requirements presented in these schedules, whether the electronic records are the record copy or duplicate."

71.     Accordingly, the SOE has a clear legal duty under federal and state law to preserve ballot images during and after an election.

72.     Indeed, Florida's Voting Systems Standards, attached as Exhibit 6 at page 19, require the preservation of "any ballot image" for the required 22-month period following an election:

> The generation of reports by the system shall be performed in a manner, which does not erase or destroy any ballot image, parameter, tabulation or audit log data. The system shall provide a means for assuring the maintenance of data integrity and security for a period of at least 22 months after closing of the polls.

**B.  Plaintiffs Have a Clear Right to Relief Against the SOE and Have Standing to Bring this Action.**

73.     In this case, the plaintiffs, as Florida voters, candidates, and a political party whose candidates are on the upcoming ballots, have standing to sue. Florida voters are able to seek enforcement of the laws concerning election matters. *See City of Hialeah v. Delgado*, 963 So. 2d 754, 756 (Fla. 3d DCA 2007) ("A voter has standing to challenge ballot language on a claim that the

language fails to comply with subsection 101.161(1), Florida Statutes.). Florida case law squarely so holds. *Sancho v. Smith*, 830 So. 2d 856, 864 (Fla. 1st DCA 2002) ("Citizens who are adversely affected by the exemption in section 101.161(1), Florida Statutes (2000) can make the argument for themselves."). *See also Crawford v. Gilchrist*, 64 Fla. 41, 59 So. 963, 967 (1912) (recognizing standing of Governor as citizen and elector, inter alia, in suit challenging proposed constitutional amendment).

74.     Additionally, the FDP is properly positioned to assert the rights of its members who are candidates in the elections as well as the registered Democratic Party voters in Miami-Dade County who will cast ballots in the upcoming elections. *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1078-79 (N.D. Fla. 2004) (Hinkle, J.) (political party is positioned to "assert its own rights as a political party and also the rights of its candidates and voters.").

75.     The Florida Fourth District Court of Appeal recognized that standing for purposes of challenging election processes requires a court to determine whether the party challenging the elections process possesses "a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation." *Wexler v. Lepore*, 878 So. 2d 1276, 1280 (Fla. 4th DCA 2004), *rev. denied*, 888 So. 2d 625 (Fla. 2004). The appellate court noted that in matters involving the election laws and procedures, court involvement is ordinarily required when the issue "is a problem which is capable of

repetition, yet may evade review." *Id.* (citing *Holly v. Auld*, 450 So. 2d 217, 218 (Fla. 1984) (mootness does not destroy an appellate court's jurisdiction when questions raised are of great public importance or are likely to recur); *Kelley v. Rice*, 800 So. 2d 247, 250 (Fla. 2d DCA 2001) (mootness does not destroy a court's jurisdiction if the question raised is of great public importance or if the error is capable of repetition yet evading review)).

76.　Here, Plaintiffs meet these requirements.

**C. Plaintiffs are Irreparably Injured.**

77.　The failure to retain digital ballot images and CVRs constitutes irreparable harm to Plaintiffs. *See Point Conversions, LLC v. WPB Hotel Partners, LLC*, 324 So. 3d 947, 956 (Fla. 4th DCA 2021) (citing *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 166 So. 2d 488, 491-92 (Fla. 2d DCA 1964)) ("Irreparable harm is an injury of such a nature that it cannot be redressed in a court of law.").

78.　Plaintiffs will suffer irreparable harm from the SOE's inevitable destruction that results from the failure to preserve the digital images and CVRs. In addition, digital ballot images and their corresponding CVRs created on voting machine hard drives and flash drives used throughout Florida will be destroyed unless the SOEs and the Florida Division of Elections are ordered to preserve them as required by law.

79.　Once these electronic materials are not preserved following an election, they are deleted from the election systems and overwritten by the

further use of the voting equipment. Once these materials are destroyed, they cannot be recovered. The immediate entry of injunctive relief is imperative to prevent the destruction of these ballot images in the 2022 elections.

80.    Absent relief from this court, Plaintiffs are irreparably injured in that they have no ability to vindicate the federal ballot preservation mandate and Florida public records laws. Once the digital ballot images and their corresponding CVRs are destroyed and not preserved, they are forever lost, depriving plaintiffs of any remedy and creating an irreparable injury to them and to all Miami-Dade voters. These are concrete and substantial injuries. Once suffered they cannot be undone. If the SOE does not take the immediately available efforts to preserve the digital ballot images and their corresponding CVRs, the information is lost forever.

**D. Plaintiffs Have No Adequate Remedy at Law.**

81.    As set forth above, Plaintiffs have no adequate remedy at law because once the digital ballot images and their corresponding CVRs are destroyed and not preserved, they are forever lost, depriving Plaintiffs of any remedy whatsoever.

82.    Moreover, monetary damages cannot compensate for the loss of the right to vote or participate in an election in which all required election materials are preserved for confirmation, verification, and post-election audit of election results, in accordance with existing Florida and federal law.

**E. The Balance of Equities Favors the Requested Relief.**

83.    The balance of equities likewise favors Plaintiffs. The SOE is not harmed in any meaningful or material way by the requested relief. The preservation of digital ballot images and their corresponding CVRs is not only required by law, but also brings meaningful transparency to Florida voters.

84.    In *Florida Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016), the court held that where a case "pits the fundamental right to vote against administrative convenience," it would be "nonsensical to prioritize" administrative convenience on the part of elections officials. In this case, similar to the case in *Florida Democratic Party v. Scott*, the issue pits a minor administrative convenience on the part of elections officials against Florida voters' rights to have their ballot images preserved in accordance with federal law and Florida public records laws to, among other things, ensure a proper vote tally is maintained.

**F. The Public Interest Is Served by Entry of an Injunction.**

85.    "The Constitution guarantees the right of voters "to cast their ballots and have them counted." *Florida Democratic Party*, 215 F. Supp. 3d at 1258. Moreover, the availability of the digital images is necessary to ensure proper tabulation and possible recount of the ballots cast.

86.    The public interest will benefit substantially by the issuance of the requested relief. The actions and inactions of the SOE in not requiring the preservation of readily available digital ballot images and their corresponding CVRs is inimical to concerns about electoral transparency, thereby eroding

public trust in our system.

87.     The SOE's actions to date have cast doubt on the willingness of the SOE to properly oversee and conduct Florida's statewide elections. Preservation of election materials promotes transparency in the elections process, thereby building voter trust in the election outcomes.

88.     Especially in today's environment of voter suspicion and the ever-present assaults on our representative democratic system, the availability of digital ballot images and their corresponding CVRs for tabulation and recount audits, evaluations, and public review will further the interests of our participatory democracy and bolster confidence in the integrity of Florida elections. *See Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("no right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."); *see also League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'").

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant the following relief:

a.     An expedited hearing on this motion;

b.     A judgment or order that digital ballot images and their

corresponding CVRs are public records;

c.      A  temporary  injunction,  to  be  made  permanent,  requiring Defendant  SOE  to  preserve  all  digital  ballot  images  and  their  corresponding CVRs, and to make those images available upon the filing of records requests;

d.      A judgment or order assessing the costs of this action against Defendants;

e.      A judgment or order awarding plaintiffs their reasonable attorneys' fees, costs, and expenses; and

f.      Any such other relief that this Court deems just and proper.

Dated: January 25, 2022.

Respectfully submitted,

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
Miami Tower, Suite 3105
100 S.E. 2nd Street
Miami, Florida 33131-2154
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
*Counsel for Plaintiffs*

*S/ Joseph S. Geller*
**JOSEPH S. GELLER**
Florida Bar No. 292771
**GREENSPOON MARDER, P.A.**
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 491-1120
Fax: (954) 331-2037
joseph.geller@gmlaw.com
*Counsel for Plaintiffs Except for*
*Joseph S. Geller*

*S/ Marc A. Burton*
**MARC A. BURTON**

*S/ Carl Christian Sautter*
**CARL CHRISTIAN SAUTTER**

Florida Bar No. 95318
**RICHARD J. BURTON**
Florida Bar No. 179337
**THE BURTON FIRM, P.A.**
2875 N.E. 191st Street, Suite 403
Aventura, Florida 33180
Tel: (305) 705-0888
Fax: (305) 705-0008
pleadings@theburtonfirm.com
mburton@theburtonfirm.com
rb@theburtonfirm.com
*Counsel for Plaintiffs*

3623 Everett Street NW
Washington, D.C. 20008
Indiana Bar No. 45-53
*Pro Hac Vice to be Sought*
Tel: (202) 285-7560
sauttercom@aol.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 25, 2022, a true and correct copy of the foregoing was sent via email through the State of Florida electronic filing portal to:

**CHRISTINA WHITE**
**MIAMI-DADE COUNTY**
**SUPERVISOR OF ELECTIONS**
Miami-Dade Elections Department
2700 NW 87th Avenue
Miami, FL 33172
soedade@miamidade.gov

**OREN ROSENTHAL**
**MICHAEL B. VALDES**
**MIAMI-DADE COUNTY**
**ATTORNEY'S OFFICE**
111 NW 1st Street
Miami, FL 33128
orosent@miamidade.gov
mbv@miamidade.gov
*Miami-Dade County Attorney*

By:    */s/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293